**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re SHERRON L. LEWIS, JR. | ) | Appeal from the United States |
| | ) | Bankruptcy Court for the Northern |
| | ) | District of Illinois, Eastern Division |
| Debtor-Appellant, | ) | |
| | ) | Bankr. No. 010 B 16195 |
| | ) | Bankruptcy Judge Jack B. Schmetterer |
| | ) | |
| | ) | Dist. Ct. No. 11 C 535 |
| | ) | District Judge Robert M. Dow, Jr. |

**MEMORANDUM OPINION AND ORDER ON APPEAL**

Appellant Sherron L. Lewis, Jr. filed this appeal from a final order of the bankruptcy court. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a). In considering a bankruptcy appeal, the Court reviews factual findings for clear error, while conclusions of law are reviewed *de novo*. See *In re Midway Airlines*, 383 F.3d 663, 668 (7th Cir. 2003); *In re Frain*, 230 F.3d 1014, 1017 (7th Cir. 2000). As explained below, finding no error of fact or law in the decisions of the bankruptcy court, the Court affirms the bankruptcy court's order and judgment entered on December 23, 2010, and also dismisses Debtor-Appellant's appeal of the bankruptcy court's September 30, 2010 order. The Court grants JP Morgan Chase Bank's motion to dismiss appeal [12].

**I.     Background**

On April 13, 2010, Debtor Sherron L. Lewis, Jr. filed a petition under Chapter 13 of the Bankruptcy Code and also filed his original Schedules A, B, C, D, E, F, G, H, I and J. On June 29, 2010, Debtor filed amended Schedules A, B, C, D, F, G, H, I and J. On August 19, 2010, Debtor filed his amended Chapter 13 plan, using the form approved by the Court, to replace his original Chapter 13 plan filed on April 26, 2010.

At the time of his bankruptcy petition, the State of Colorado, through its attorney general, was investigating Debtor for unlawful foreclosure rescue services. On July 26, 2010, the State of Colorado commenced a civil law enforcement action under the Colorado Consumer Protection Act against Debtor in Jefferson County District Court, Colorado. The law enforcement action sought to enjoin Debtor, who is not a licensed attorney, from engaging in unlawful foreclosure rescue services. Those services involved, among other things, Debtor taking upfront fees from, and an interest in the property of, homeowners in foreclosure to purportedly assist with challenging the foreclosure in court. After entering a preliminary injunction on August 16, 2010, which enjoined Debtor from engaging in foreclosure services, the state court, on January 3, 2011, entered a judgment against Debtor in favor of the State of Colorado for $181,266.42 for civil penalties, disgorgement, restitution, costs, and attorney fees and permanently enjoined Debtor from foreclosure services.

On June 28, 2010, the State of Colorado filed a motion with the Bankruptcy Court objecting to confirmation of the plan and challenging venue. On July 30, 2010, the Bankruptcy Court issued a final pretrial order for an evidentiary trial on the State's objection, and set the evidentiary trial for September 28, 2010. The final pretrial order required the parties to exchange all exhibits that they intended to introduce in evidence. It also stated that "[s]ince the Debtor has the burden of proof to establish Plan feasibility. * * * Debtor is to include in his list of exhibits and supply copies to Colorado counsel and Judge's law clerk all documents relating or referring to all his sources of income reported by him in his Schedules," including the following: (1) his "income for operation of business/profession" shown as $1,740 on line 7 of his Bankruptcy Schedule I; (2) "a supplement to his Schedule I consisting of the 'Statement' to be attached as required at Line 7 thereof, and include same as one of his exhibits"; (3) his income from real

property scheduled as $1,950 on line 8 of Schedule I; and (4) his income from "self employment" shown as $9,468 in response to paragraph 1 of his Statement of Affairs. The final pretrial order also required Debtor to "produce at the trial all originals of the following of accounts, records of all income from any business and for real estate, and business expenses for his business and real estate interests for the period January 1, 2009 through July 30, 2010." The pretrial order also authorized the parties to serve written discovery requests.

Debtor failed to comply with the pretrial order or respond to the State of Colorado's discovery requests. Instead, Debtor offered for trial six exhibits, A through F, which were admitted into evidence without objection. The only exhibits relating to financial records, Exhibits C through E, were Debtor's bank statements for the time period December 18, 2009 through April 19, 2010 ("bank statements"). Exhibits A and B were water shut-off orders from the City of Park Ridge addressed to Eldon O. Williams and Norma Williams, and Exhibit F is a copy of the state court preliminary injunction order in the law enforcement action. While the bank statements show certain deposits from December 18, 2009 through April 19, 2010, the bank statements do not constitute "all documents relating or referring to all his sources of income reported by him in his Schedules," as required by the final pretrial order. Nor do the bank statements reveal the source or nature of the deposits to establish any regular income.

On September 1, 2010, the Chapter 13 Trustee filed a motion to dismiss Debtor's petition, claiming that it was filed in bad faith, that Debtor lacks regular income, and that venue was improper. The bankruptcy court consolidated for the hearing the motion to dismiss with the State of Colorado's objection. On September 28, 2010, the bankruptcy court conducted a half-day evidentiary hearing on two issues: (1) whether venue was proper in this district and (2) whether the Debtor's Chapter 13 plan is feasible. At the hearing, Debtor appeared *pro se* and

took the witness stand, invoking the Fifth Amendment privilege against self-incrimination in response to almost every question on the issue of whether he had regular income, whether he could establish a feasible plan, and whether he satisfied the venue statute. At trial, Debtor relied only on Exhibits A through F (described above), the petition, and his schedules.

On December 23, 2010, the bankruptcy court issued its findings of fact and conclusions of law relating to the propriety of venue, the feasibility of the plan, and bad faith. For the reasons set forth in the memorandum opinion, the bankruptcy court issued separate orders dated December 23, 2010 that (1) granted the State of Colorado's objection to confirmation of Debtor's plan; (2) granted the Chapter 13 Trustee's motion to dismiss, with a prohibition against Debtor re-filing in the district without court approval and notice to all creditors; and (3) denied Debtor's motion to remove the Chapter 13 Trustee.

On the issue of venue, the bankruptcy court concluded "from the overwhelming weight of proof" that Debtor's domicile, residence, principal place of business in the United States, and principal assets were located in Colorado and that venue was not proper in this district, making the following findings of fact:

1. Sherron L. Lewis Jr. (the "Debtor") has had at all times, since and at the time this bankruptcy case was filed on April 13, 2010, a Colorado driver license, not an Illinois driver license.
2. The Debtor is registered to vote in Colorado, not Illinois.
3. The Debtor first opened a bank account in Illinois on April 9, 2010, using an Illinois address. The Debtor's prior bank accounts were opened in Colorado and used a Colorado address.
4. The Debtor's main vehicle, Colorado license plate no. 479WGK, 2000 Ford Expedition, is registered in Colorado and the registration was renewed in Colorado on or about June 25, 2010. The Debtor has no vehicles registered in Illinois.
5. The Debtor has not filed any Illinois state tax returns.
6. The Debtor's Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income lists the Debtor's state of residence as "Colorado." [Doc. No. 10, page, line 16].
7. Debtor filed an Adversary Complaint stating that "[t]he principal asset of the

4

        Debtor/Plaintiff's estate is his residence located at 2551 York Street, Denver, CO 80205 ("York Street"), a property the Debtor/Plaintiff has owned for approximately 15 years." [Doc. No. 18, ¶ 5].

8. On the amended Schedule C, the Debtor claims a Colorado homestead exemption for his residence at 2551 York Street, Denver, Colorado 80205 (the "York Street property").

9. On December 10, 2009, the Debtor signed, under penalty of perjury, a Home Affordable Modification Trial Period Plan under the federal government's Home Affordable Modification program for the first mortgage on the said York Street property in Colorado with Chase Home Finance, LLC, for a three-month trial period. In this signed document, the Debtor represents that "I live in the Property as my principal residence . . . ." [Doc. No. 60, pages 13 of 16].

10. On or about April 6, 2010, the Debtor received for foreclosure assistance in Colorado an $1,800 check from Paraclete Partners, LLC, 1045 Clarkson Street, Suite 306, Denver, Colorado 80218. The check was deposited into the Debtor's bank account in Colorado.

11. The Debtor received a $550.00 Money Order, dated May 12, 2010, payable to him at the York Street property, which was deposited in Colorado on May 18, 2010.

12. On July 7, 2010, the Debtor filed Articles of Organization for America's Foreclosure Defense, LLC, with Colorado Secretary of State forming a limited liability company under Colorado law with a principal street address as the York Street property.

Memorandum Opinion at pp. 2-3. The bankruptcy court also noted that Debtor filed a pleading in which he "asserted that he 'has been domiciled on and off' [at 1010 N. Western Avenue, Park Ridge, IL] since April of 2009." Memorandum Opinion at p. 11. Yet, the bankruptcy court noted that Debtor "has no record of any ownership interest in or any rental payment for that property." Memorandum Opinion at p. 12.

    Given that Debtor's legal pleadings in the bankruptcy case and his statement under oath for a loan modification repeatedly identify his residence as Colorado, and the lack of any evidence of residency, domicile, principal place of business, or assets in Illinois during the relevant time period, the bankruptcy court concluded that venue was improper and dismissal was warranted under Federal Rule of Bankruptcy Procedure 1014(a)(2). The bankruptcy court noted that the only evidence proffered by Debtor on venue (two water-shut off notices for the 1010 N. Western

Avenue property in Illinois; bank statements ending January 21, 2010, March 17, 2010, and April 19, 2010; and the preliminary injunction order from the Colorado state court) did not compel a different conclusion. Memorandum Opinion at p. 13.

On the issue of plan feasibility, the bankruptcy court concluded that Debtor's Plan was not feasible and could not be confirmed. The court observed, "As a condition to confirmation of a Chapter 13 plan, 11 U.S.C. § 1325(a)(6) requires that the Debtor be able to make all payments under the plan and comply with the plan." Memorandum Opinion at p. 14. The court determined: "Under 11 U.S.C. § 101(30), the Debtor fails to meet the threshold eligibility for an 'individual with regular income,' which means an 'individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title * * *.'" Memorandum Opinion at p. 15 (citing 11 U.S.C. § 109(e)). In support of these conclusions, the court found that Debtor could not establish that he owned the rental property for which he claimed rental income on Schedule G: "The Debtor has failed to provide sufficient documentation to support his income from operation of business/profession of $1,740 or his rental income of $1,950 that would allow him to make his current monthly mortgage payments and comply with the plan." Memorandum Opinion at p. 15. The court also found: "On the amended Schedule J, the Debtor identified average monthly expenses as $3,105 but included rent, home mortgage, or mobile-home lot rent of only $1,500, leaving him about $1,500 short of his actual mortgage expenses for the two properties he seeks to retain." Memorandum Opinion at p. 15. Indeed, Debtor's current monthly mortgage payments exceed $3,000 per month, giving the impression that he could not comply with the plan given his income and expenses. Memorandum Opinion at p. 15. The bankruptcy court concluded that "Debtor has failed to demonstrate a feasible plan given his lack of regular income, lack of documented income, and

6

his actual expenses." Memorandum Opinion at p. 15.

On January 4, 2011, Debtor filed a notice of appeal, which stated that he was appealing the bankruptcy court's December 23, 2010 order. On January 24, 2011, Debtor filed an amended notice of appeal, which stated that he was appealing both the December 23 order and the September 28, 2010 order granting JP Morgan Chase relief from the automatic stay. Debtor's appeal was docketed in this Court on January 25, 2011. On May 2, 2011, Debtor filed his opening brief, and on June 2, 2011, the State of Colorado filed its response brief. Debtor's reply brief was due on June 16, 2011; however, Debtor requested a 32-day extension of time to file his reply, which the Court granted. Despite the extension, Debtor never filed a reply brief. On September 1, 2011, JP Morgan Chase Bank filed a motion to dismiss Debtor's appeal as untimely. Debtor also failed to respond to the motion to dismiss.

## II. Analysis

On appeal, Debtor challenges the bankruptcy court's determination that he was not entitled to confirmation of a Chapter 13 plan. Specifically, he challenges the bankruptcy court's determination that venue was not proper, that he did not have regular income, and that the plan was not feasible. He also maintains that the State of Colorado did not have standing to object to the confirmation for his Chapter 13 plan. Finally, he challenges the bankruptcy court's decision to grant JP Morgan Chase relief from the automatic stay.

### A. Standing

Debtor contends that the State of Colorado, through Attorney General John Suthers, is not a creditor or party in interest in his Chapter 13 bankruptcy. The State of Colorado maintains that it had legal standing under the Bankruptcy Code to file its objection to confirmation of

Debtor's Chapter 13 Plan because it is a party in interest with a sufficient stake in the bankruptcy.

11 U.S.C. § 1324 provides that "[a] party in interest may object to confirmation of the plan." The Seventh Circuit has approved of a state objecting to confirmation of a Chapter 13 plan where confirmation would have discharged debt owed to the state for consumer protection violations. See, *e.g.*, *In Matter of Smith*, 848 F.2d 813 (7th Cir. 1988). Similarly, in *Miller v. U.S. Through Farmers Home Administration*, 907 F.2d 80, 82 (8th Cir. 1990), the Eighth Circuit approved of a federal agency objecting to confirmation, stating that "11 U.S.C. § 1324 gives any party in interest the unqualified right to object to confirmation of the Chapter 13." Moreover, as stated by the Seventh Circuit, "a party in interest * * * is 'anyone holding a direct financial stake in the outcome of the [bankruptcy] case."[1] *FutureSource LLC v. Reuters Limited*, 312 F.3d 281, 284 (7th Cir. 2002) (citing 7 Collier on Bankruptcy ¶ 1109.01[1], p. 1109–4 (15th ed. 2002)); see also *In re UNR Industries, Inc.*, 71 B.R. 467, 471 (Bankr. N.D. Ill. 1987) ("Persons who are not creditors but nevertheless have demonstrated a sufficient stake in the outcome of the case may be deemed to be parties in interest and be entitled to be heard."). Thus, while neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure define "party in interest," that term includes both creditors and parties with a sufficient stake in the outcome. *In re Shelton*, 428 B.R. 457, 461 (Bkrtcy. N.D. Ohio 2010) ("Where a creditor finds its treatment in a debtor's proposed plan to be improper, the Code contemplates that the creditor bring the matter to the Court's attention by filing an objection [under section 1324].").

---

[1] The term "claim" means the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A). A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the date of the order for relief concerning the debtor." 11 U.S.C. § 101(10)(A). Thus, although the State of Colorado did not yet have a judgment against the Debtor at the time of the petition, it had a "claim" as defined by the Code.

Under the Colorado Consumer Protection Act (CCPA), the attorney general for the State of Colorado has enforcement authority to bring civil prosecutions for deceptive trade practices. C.R.S. § 6-1-103. The attorney general may obtain an injunction, restitution, and disgorgement. C.R.S. § 6-1-110(1). Moreover, the CCPA authorizes the attorney general to "bring a civil action on behalf of the state to seek the imposition of civil penalties." C.R.S. § 6-1-112(1). Finally, the attorney general also is entitled to costs and attorney fees for successful enforcement of the CCPA. C.R.S. § 6-1-113(4). As a bankruptcy court in Colorado observed, the restitution or disgorgement awarded to the State of Colorado under the CCPA is payable to a governmental unit and there is no requirement that the state forward the funds to consumers. *In re Jensen*, 395 B.R. 472, 485 (Bkrtcy. D. Colo. 2008) ("A state's interest in enforcing consumer protection laws is such an 'important' state interest."). The court also observed:

> A primary purpose of the CCPA is to deter and punish deceptive trade practices. Its enforcement also serves to protect the public at large, not just particular victims. Accordingly, Plaintiffs' interests here are sufficiently focused on the State's interest in deterrence, punishment, and protection of the public at large, rather than the victim's desire for compensation such that the restitution obligation operates for the benefit of the State and thus places the restitution order within the scope of § 523(a)(7).

*Id.* at 486 (internal citations and quotations omitted). Because of the important public interest in enforcing the CCPA, as identified by the cases cited, the State of Colorado is a creditor with a claim against Debtor and therefore a "party in interest" under the Code.

  **B. Venue**

28 U.S.C. § 1408 governs venue of cases under Title 11 and provides:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—(1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day

> period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district * * *.

Fed. R. Bankr. P. 1014(a)(2) states:

> [I]f a petition is filed in an improper district, the court, on timely motion of a party in interest or on its own motion and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may dismiss the case or transfer it to any district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

The venue statute thus provides that the relevant facts are those for the 180-day period preceding the filing of the Debtor's petition. See, *e.g., Matter of Peachtree Lane Associates*, Ltd.150 F.3d 788, 792 (7th Cir. 1998) ("[T]he party challenging venue bears the burden of establishing by a preponderance of the evidence that the case was incorrectly venued.")

Residence for venue purposes means "a permanent residence, one's home, as distinguished from a mere stopping place for the transaction of either business or pleasure." *In re Frame*, 120 B.R. 718, 723–724 (Bankr. S.D.N.Y. 1990); see also *In re Handel*, 253 B.R. 308, 310 (1st Cir. 2000) (stating that while a person may have multiple residences the "longer portion" language in the venue statute means that only one residence may qualify). While the venue statute provides four bases for venue and "any of the four is jurisdictionally sufficient" (see *In re Segno Commc'ns, Inc*., 264 B.R. 501, 505 (Bankr. N.D. Ill. 2001)), the bankruptcy court concluded that Debtor did not provide support for any basis in response to the State of Colorado's and the Chapter 13 Trustee's challenge to venue. Contrary to Debtor's "claim" that he was a resident of Illinois, the bankruptcy court found that the evidence presented did not support a finding of Illinois residency; rather, all evidence pointed to residency only in Colorado.

After an evidentiary hearing, the court specifically found that Debtor stated that he was a resident of Colorado on various pleadings in his bankruptcy; that he signed a loan modification

10

application subject to penalty of perjury on December 9, 2009, affirming that he was residing in his home in Colorado for the three-month trial modification period beginning on or about December 9, 2009; that he was registered to vote in Colorado, had his vehicle registered in Colorado, and had only a Colorado driver license; that he opened an Illinois bank account four days before filing his petition; and that he had not filed Illinois state tax returns. Memorandum Opinion at pp. 12-13. Based on the numerous factual findings made by the bankruptcy court, the Court concludes that the bankruptcy court correctly found that the State of Colorado demonstrated "overwhelming proof" that venue was improper.

### C. Denial of Confirmation

Chapter 13 in the Bankruptcy Code requires feasibility for confirmation. "[T]he court shall confirm a plan if * * * (6) the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). As an additional condition to confirmation of a Chapter 13 plan, 11 U.S.C. § 1325(a)(1) requires that the plan comply with all applicable provisions of the Bankruptcy Code. Such applicable provisions include 11 U.S.C. § 109(e), which limits Chapter 13 relief to individuals with regular income. "[T]he debtor bears the ultimate burden of proof as to satisfaction of the confirmation criteria of 11 U.S.C. § 1325(a)." *In re Jongsma*, 402 B.R. 858, 871 (Bkrtcy. N.D. Ind. 2009). The Bankruptcy Court's findings concerning the feasibility of the Chapter 13 plan are questions of fact, which are reviewable for clear error. *In re Wagner*, 259 B.R. 694, 698 (8th Cir. BAP 2001); see also *In re Save Our Springs (S.O.S.) Alliance, Inc.*, 632 F.3d 168, 172 (5th Cir. 2011) ("We typically review a bankruptcy court's conclusions about plan feasibility for clear error.").

As one bankruptcy court observed:

> It is the court's role to make a factual determination as to a plan's "reasonable likelihood of success." *First Nat'l Bank of Boston v. Fantasia* (*In re Fantasia*),

11

> 211 B.R. 420, 423 (1st Cir. BAP 1997).  In other words, "[t]he bankruptcy court should be satisfied that the debtor has the present as well as the future financial capacity to comply with the terms of the plan." *Id.*  Thus, a plan is not feasible and is not confirmable if a debtor's income will not support the plan's proposed payments. *E.g., In re Barnes*, 275 B.R. 889, 894 (Bankr. E.D. Cal. 2002) ("[T]he debtors showed no disposable income with which to fund a plan * * * * [T]he debtors have been unable to actually pay the amount projected * * * to the trustee."); *In re Bernardes*, 267 B.R. 690, 695 (Bankr. D.N.J. 2001) ("While the feasibility requirement is not rigorous * * * the plan proponent must, at minimum, demonstrate that the Debtor's income exceeds expenses by an amount sufficient to make the payments proposed by the plan."); *In re Wilkinson*, 99 B.R. 366, 369 (Bankr. N.D. Ohio 1989) ("[D]ebtors will not be able to comply with the plan and make all payments thereunder.").

*In re Buccolo*, 397 B.R. 527, 530 (Bkrtcy. D.N.J. 2008).  Here, the bankruptcy court found that Debtor provided insufficient documents relating or referring to his "income for operation of business/profession."  Memorandum Opinion, at p. 9, ¶ 57.  It also found that Debtor provided insufficient documents relating or referring to his "income from real property" and to his income from self-employment on the Statement of Financial Affairs.  The court further noted that the mortgages on the two Colorado homes that Debtor sought to retain exceeded $3,000 and he therefore could not comply with the plan given his income and expenses.  In addition, the court determined that Debtor failed to meet the threshold for an "individual with regular income" under 11 U.S.C. § 101(30) and 11 U.S.C. § 109(e).  As a result, the court concluded that "Debtor has failed to demonstrate a feasible plan given his lack of regular income, lack of documented income, and his actual expenses."  Memorandum Opinion, at p. 15.  Those findings and conclusions were clearly supported by the record before the bankruptcy court.

Finally, the bankruptcy court's sanction of dismissal with an injunction prohibiting Debtor from refiling in this district without court approval and notice to creditors was within the discretion of the bankruptcy court.  The court provided Debtor with ample opportunity to comply

with its order to provide documents to support his proposed plan, and Debtor failed to comply. Thus, the bankruptcy court's sanction was reasonable under the circumstances.

### D. JP Morgan Chase Bank's Motion to Dismiss

On September 13, 2010, JP Morgan Chase ("Chase") filed a motion for relief from automatic stay or in the alternative dismissal of the case in Debtor's Chapter 13 proceeding. On September 30, 2010, the bankruptcy court entered an order granting Chase's motion. On January 4, 2011, Debtor filed his notice of appeal from the bankruptcy's court's December 23, 2010 dismissal order. Then, on January 24, 2011, Debtor filed an Amended Notice of Appeal from the bankruptcy court's December 23 order dismissing the Chapter 13 proceeding and from its September 30, 2010 order granting Chase relief from the automatic stay. Chase contends that Debtor's appeal as it pertains to Chase is untimely and thus the Court lacks jurisdiction to review the bankruptcy court's order in respect to Chase.

Pursuant to 28 U.S.C. § 158(a)(1), this Court has jurisdiction to hear appeals from final judgments, orders, and decrees. An order granting relief from an automatic stay pursuant to 11 U.S.C. § 362 is final for purposes of filing an appeal. See *In re Boomgarden*, 780 F.2d 657, 659-60 (7th Cir. 1985); see also *In re Paulson*, 2011 WL 3300082, at *5 (9th Cir. BAP 2011). An appeal from a final bankruptcy order must be filed within 14 days from entry of the order (see Rule 8002(a)), and the time deadline for filing an appeal is mandatory and jurisdictional. See *Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 264 (1978); see also *In re Bond*, 254 F.3d 669, 673 (7th Cir. 2001). Debtor Lewis did not file his amended notice of appeal until January 24, 2011, 116 days after entry of the bankruptcy court's September 30, 2010 order granting Chase relief from the automatic stay. Because Debtor's appeal was well beyond the 14-day deadline, his appeal is not timely and the Court lacks jurisdiction to review the bankruptcy

court's September 30, 2010 order. Therefore, Lewis' appeal is dismissed at to that issue. See *Paulson*, 2011 WL 3300082, at *5 (reviewing court should not consider merits of untimely appeal from order granting relief from stay).

### E. Appeal related to Kondaur Capital Corporation

In his brief, Debtor also states that the bankruptcy court abused its discretion by granting a motion for relief from stay filed by a second lender, Kondaur Capital Corporation. However, Debtor's January 4, 2011 notice of appeal stated that he was appealing only the bankruptcy court's December 23, 2010 order. Then, Debtor's January 24, 2011 amended notice of appeal stated that he was appealing both the December 23 order and the September 30, 2010 order granting JP Morgan Chase relief from the automatic stay. Neither of Debtor's notices of appeal references any order regarding Kondaur Capital Corporation, and neither the December 23 or September 30 orders of the bankruptcy court pertain to "Kondaur Capital Corporation." Thus, to the extent Debtor is attempting to appeal an order related to Kondaur Capital Corporation, that appeal also is dismissed as untimely.

### III. Conclusion

For the foregoing reasons, the Court affirms the bankruptcy court's order and judgment entered on December 23, 2010, and dismisses Debtor-Appellant's appeal of the bankruptcy court's September 30, 2010 order as untimely. The Court grants JP Morgan Chase Bank's motion to dismiss appeal [12]. This case is closed.

Dated: September 30, 2011          _____
                                                           Robert M. Dow, Jr.
                                                           United States District Judge